IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LONG LAM, | ) | No. C 06-7347 JSW (PR) |
| Petitioner, | ) | |
| vs. | ) | **ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS** |
| BEN CURRY, Warden, | ) | |
| Respondent. | ) | (Docket No. 19) |

**INTRODUCTION**

Petitioner Long Lam, a prisoner of the State of California currently incarcerated at the Correctional Training Facility in Soledad, California, filed a habeas corpus petition pursuant to 28 U.S.C. § 2254 challenging the Board of Parole Hearings' ("BPH") denial of parole during parole suitability proceedings in 2004. This Court ordered Respondent to show cause why a writ should not issue. On March 4, 2008, Petitioner filed an amended petition. Thereafter, the Court ordered Respondent to file an answer. Respondent filed an answer, memorandum and exhibits in support thereof. Petitioner has filed a traverse. For the reasons stated below, the petition is denied on the merits.

**BACKGROUND**

According to the petition, on August 12, 1985, Petitioner pled guilty to one count of second degree murder with use of a firearm, three counts of assault with a deadly weapon with use of a firearm, one count of attempted murder with great bodily injury, and one count of discharge of a firearm in an inhabited dwelling. Petitioner was sentenced to

seventeen years-to-life in state prison.

In this habeas action, Petitioner does not challenge his conviction or sentence, but instead alleges that his due process rights were violated by the denial of parole by the BPH during a subsequent parole suitability hearings on October 28, 2004. Petitioner further complains that the terms of his plea agreement were violated by the Board's decision to deny him parole.

At the October 28, 2004 hearing, the BPH relied, in part, upon the following account of Petitioner's commitment offenses excerpted from the Probation Officer's Report:

> On January 15, 1985, the defendant shot Daniel Schwieterman to death. He also shot Samuel Quintere in the head, but did not kill him. In the same incident, the defendant assaulted Joe Alaniz, Louie Madraga and Alex Varga, with a firearm. Finally, the defendant discharged a firearm at an occupied motor vehicle, but did not injure anyone.
>
> The offenses occurred when the defendant drove up to a disco where the various victims were standing in the street. The defendant had some trouble parking his vehicle and actually drove up on the curb. One of the people in the victim-group laughed at the defendant and some remarks were made about his driving ability. The defendant then became angry and got out of his car with a handgun. He began shooting in the group of victims, killing Daniel Schwieterman.
>
> He then got back into his car and drove away. Victim Quintera began following the defendant in his own car. However, during the chase, the defendant fired three or four shots at Quintera, wounding him in the head. The defendant was then apprehended by an armed security guard and held until police arrived. Defendant admitted the offense to the police, saying that he was mad and that he was trying to scare the victims. At the time of his arrest, the defendant [had a] .14 blood-alcohol level.

Respondent's Answer, Ex. 3 at 2-3.

The 2004 BPH panel considered Petitioner's lack of prior criminal history. At the hearing, Petitioner also discussed his arrest for drunk driving in 1983, for which he stated he spent a night at the precinct and then was released, but had to participate in AA. (Ex. 3 at 20.) The BPH panel also questioned about and considered Petitioner's social history, discussing his arrival from Vietnam in July 1978, six years prior to the incident

2

in question, his time with the Vietnamese Army and the eighteen months he spent as a prisoner of war. Petitioner testified that his abuse of alcohol commenced when he "lost everything" after his escape from a prisoner of war camp, and his immigration to the United States. (Ex. 2 at 17.)

Petitioner testified that during his time in prison he has obtained a vocational certification for machine shop, a GED and a business certificate (Ex. 2 at 22-23). The panel further discussed Petitioner's receipt of laudatory chronos for his work as a receiving and release clerk and for participating in AA and NA. (*Id.*)

Petitioner testified that he has a grown daughter living in New York, with whom he is in contact. (Ex. 2 at 18-19.) Petitioner's former wife came to the United States before him, but she remarried someone else. (Ex. 2 at 18.) Petitioner later remarried as well. (*Id.*) However, no letters of support from family members were in Petitioner's file. (Ex. 2 at 25.)

The Presiding Commissioner discussed Petitioner's parole plans. Petitioner is not an American citizen and has an INS Immigration Hold, however it does not appear that there was supporting documentation in his file. (Ex. 2 at 28.) Petitioner testified that if he were paroled, he would request to be paroled to Vietnam. (*Id.*) Petitioner testified that if he were, he plans to lives with his aunt and uncle in South Saigon or another uncle in Saigon. (Ex. 2 at 28-29, 30.) Petitioner's parole plans if paroled to Vietnam include working at a restaurant. (Ex. 2 at 30.) If he is not deported, Petitioner plans to live with his sister in Bishop, Yosemite and to work at her restaurant there, though no letter to the effect was in Petitioner's file. (Ex. 2 at 32.)

The Presiding Board Member noted that there was a confidential letter from the victim's mother in the file that would be considered. (Ex. 2 at 25.) Two letters from the Los Angeles County Sheriff's Department and the Los Angeles District Attorney's Office opposed to Petitioner's parole were also in Petitioner's file. (Ex. 2 at 33-34.)

The Board also considered Petitioner's disciplinary history while incarcerated,

including 2 disciplinary findings, one of which was for possession of contraband (food) and the other for a verbal confrontation. (Ex. 2 at 22.) The panel also considered a report from Petitioner's correctional counselor which stated that Petitioner was believed to pose a low degree of threat to the public if released. (Ex. 2 at 26.) The panel further considered a 2004 psychological report from Dr. S. Stack stated that Petitioner would have a violence potential that would be no more than that of an average citizen, yet stated that alcohol was a risk factor as a precursor to violence. (Ex. 2 at 27.)

Los Angeles Deputy District Attorney Anthony J. Sousa expressed the District Attorney's Office's opposition to parole, noting that Petitioner's recognition of his actions are a dramatic departure from past parole hearings where Petitioner claimed he suffered from a flashback from his wartime experiences, so he clearly still lacks insight about himself and the crimes he committed. (Ex. 2 at 37-38.) He argues that Petitioner's acknowledgment of his crimes did not include an accurate response regarding the number of people he wounded. (Ex. 2 at 39.) Sousa states that Petitioner's insufficient remorse does not support Petitioner's release from prison. (Ex. 2 at 40.)

The father of murdered victim Daniel Schwieterman also attended the parole hearing and testified that he has never been offered a personal apology from Petitioner, despite being available and attending all of Petitioner's parole hearings. (Ex. 2 at 48-49.)

After a recess to consider the evidence, the BPH found that Petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society or a threat to public safety if released from prison." (Ex. 2 at 52.) This determination was based on the especially violent and brutal manner of Petitioner's commitment offense including the attack on 5 people, demonstrated a callous disregard for human life. (Ex. 2 at 53.) The Presiding Commissioner noted that Petitioner has realistic parole plans but no supporting documentation. (*Id.*) The Board commended Petitioner for his behavior in prison and his academic achievements but noted that Petitioner had not sufficiently participated in self help programs. (Ex. 2 at 53-54.) The Board found that Petitioner

needed to participate in additional self-help in order to face, discuss, understand, and cope with stress in a non-destructive manner. (Ex. 2 at 54.) In a separate decision, the Board denied parole for two years. (Ex. 2 at 56.)

Petitioner challenged the 2004 Board's decision in Los Angeles County Superior Court, which denied his claims in a reasoned opinion on August 15, 2005. (Answer Ex. 7.) The California Court of Appeal for the Second Appellate District and the California Supreme Court summarily denied Petitioner's habeas petitions on October 4, 2005 and September 13, 2006, respectively. (Answer Ex. 9 & 11.) Petitioner filed a federal petition for a writ of habeas corpus on October 20, 2006. The case was transferred to the Northern District of California on November 29, 2006.

On January 11, 2007, Petitioner was again denied parole by the BPH at a subsequent hearing. On April 9, 2007, Petitioner filed another petition in Los Angeles County Superior Court challenging the denial of parole on the basis of breach of contract. That petition was denied by the California Court of Appeal on May 4, 2007. Petitioner appealed that decision to the California Supreme Court on August 17, 2007. That petition was denied on February 20, 2008. Petitioner filed the instant federal petition on March 4, 2008.

## DISCUSSION

Petitioner claims that the BPH violated his due process rights by denying him parole without factual support for a finding of unsuitability; relying on the static factors of his crime alone; failing to comply with California Penal Code section 3041 and breaching the contract of his plea agreement. Petitioner also raises claims regarding the legality of his guilty plea and plea agreement.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not

5

challenging his underlying state court conviction." *White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this Court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Under this deferential standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Williams*, 529 U.S. at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

In determining whether the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, a federal court looks to the decision of the highest state court to address the merits of a petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000). If the state court only considered state law, the federal court must ask whether state law, as explained by the state court, is "contrary to" clearly established governing federal law.

*See, e.g., Lockhart v. Terhune*, 250 F.3d 1223, 1230 (9th Cir. 2001); *Hernandez v. Small*, 282 F.3d 1132, 1141 (9th Cir. 2002) (state court applied correct controlling authority when it relied on state court case that quoted Supreme Court for proposition squarely in accord with controlling authority). If the state court, relying on state law, correctly identified the governing federal legal rules, the federal court must ask whether the state court applied them unreasonably to the facts. *See Lockhart*, 250 F.3d at 1232.

Legal Claims and Analysis

1. <u>Factual Support for Parole Denial</u>

Petitioner claims that his due process rights under the Fourteenth Amendments were violated by BPH's denial of parole without a "factual record to support the findings." Petitioner also claims that the Board improperly applied the "some evidence" standard in determining whether Petitioner should be found suitable for parole. Respondent claims the "some evidence" standard is improper.

    A.    Background

Due process requires that "some evidence" support the parole board's decision finding the prisoner unsuitable for parole. *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006) (holding that the "some evidence" standard for disciplinary hearings outlined in *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985), applies to parole decisions in a section 2254 habeas petition); *Biggs v. Terhune*, 334 F.3d 910, 15 (9th Cir. 2003) (same); *McQuillion v. Duncan*, 306 F.3d 895, 904 (9th Cir. 2002) (same). The "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the parole board] were without support or otherwise arbitrary. *Hill*, 472 U.S. at 457. Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455 (quoted in *Sass*, 461 F.3d at 1128).

When assessing whether a state parole board's suitability determination was

supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. *Irons v. Carey*, 505 F.3d 846, 851 (9th Cir. 2007). Accordingly, in California, the court must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole. *Id.*

The recent California Supreme Court case of *In re Lawrence*, 44 Cal.4th 1181 (2008), clarified what California law requires the parole board to find in order to deny parole: the Board must find only that the prisoner is a current threat to public safety, not that some of the specific factors in the regulations have or have not been established. *Id.* at 1212. This means that the "some evidence" test is whether there is "some evidence" that the prisoner is a threat, not whether there is "some evidence" to support particular secondary findings of the parole board, for instance that the prisoner needs more time for rehabilitation. *Id.*; *see Irons*, 505 F.3d at 851 (when assessing whether a state parole board's suitability determination was supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state).

The Los Angeles County Superior Court denied Petitioner's habeas petition, finding that establish that there is "'some evidence' to support the Board's finding that the petitioner is unsuitable for parole." (Answer Ex. 7.) The court relied on the "especially violent and brutal" nature of the offense, that Petitioner had not sufficiently participated in self-help programs, noting that Petitioner failed to adequately explain the lack of precipitation for his actions.

Because the Superior Court is the highest state court to address the merits of Petitioner's claim in a reasoned opinion, this Court looks to its decision to decide whether it was contrary to, or involving an unreasonable application of, clearly established federal law. *See LaJoie*, 217 F.3d at 669 n.7.

8

B. Analysis

The decision of the Los Angeles County Superior Court found that the record contained "some evidence" to support the BPH conclusion that Petitioner was unsuitable for parole. (Answer Ex. 7.) The decision found that there was "some evidence" to support for the BPH's finding that the crime was especially violent or brutal because it involved multiple victims and that Petitioner could benefit from additional self-help programming to gain insight and address "outstanding anger related issues." *Id.* at 2. The Superior Court found support for the BPH's decision that Petitioner would pose an unreasonable public safety threat. *Id.* at 3.

The BPH had some evidence to support its findings that Petitioner needed further programming "in order to face, discuss, understand, and cope with stress in a nondestructive manner. " (Answer Ex. 2 at 54.) Specifically, while Petitioner had committed himself to AA and NA, the BPH relied on his failure to complete any anger management programs. Petitioner's testimony showed that he lacked adequate insight into his criminal behavior as his testimony reflected that he could not recall the number of victims he shot and an adequate understanding for why he had committed an attack on five victims. In rendering a decision, a Deputy BPH Commissioner relied on this failure of understanding, stating that the inconsistencies from his testimony "causes me to conclude that you've either put the commitment offense out of your mind and behind you, which is not an appropriate move to make, or you're simply glossing over it, which is also not appropriate." *Id.* at 57.

The facts on which the BPH relied provide some evidence to support the finding of Petitioner's current dangerousness. The findings regarding the callousness of his crimes, as well as his lack of insight constitute some evidence which "rationally indicate[s] that [he] will present an unreasonable public safety risk if released from prison." *In re Scott*, 133 Cal. App. 4th 573, 595 (2005). It was not irrational for the BPH to conclude that a prisoner who cannot provide adequate insight into his own

9

behavior continues to pose an unreasonable risk to society, despite his other prison behavioral and educational gains.

The question before this Court is not whether BPH properly weighed the evidence before it; the question is whether there was "some evidence" to support the BPH's denial of parole. *Sass*, 461 F.3d at 1128. It is not up to this Court to "reweigh the evidence." *Powell v. Gomez*, 33 F.3d 39, 42 (9th Cir. 1994). Because the BPH's denial of parole was supported by some evidence, the Los Angeles County Superior Court decision upholding the BPH's parole denial was not contrary to, or an unreasonable application of, clearly established federal law. *See Williams*, 529 U.S. at 411; 28 U.S.C. § 2254(d). Therefore, habeas relief is not warranted on this claim.

2. <u>Reliance on Crime Alone</u>

Petitioner claims that the Board's violated his due process by denying his parole solely based on the facts of his crime alone. Petitioner claims the Board ignored his many achievements while in prison. Respondent argues that Petitioner fails to state a claim.

A. Background

California law clearly provides that "the nature of the prisoner's offense, alone, can constitute a sufficient basis for denying parole." *In re Rosenkrantz*, 29 Cal. 4th 616, 682 (2002). However, "the denial of parole may be predicated on a prisoner's commitment offense only where the Board can 'point to factors beyond the minimum elements of the crime for which the inmate was committed' that demonstrate the inmate will, at the time of the suitability hearing, present a danger to society if released." *Irons*, 505 F.3d at 852 (citing *In re Dannenberg*, 34 Cal. 4th 1061, 1071 (2005)). The circumstances must show that "[t]he prisoner committed the offense in an especially heinous, atrocious or cruel manner[.]" Cal. Code Regs. tit. 15, § 2402(c)(1). But overall, the "circumstances of the crime reliably established by evidence in the record" must "rationally indicate that the offender will present an unreasonable public safety risk

if released from prison" to justify a denial of parole on the basis of the commitment offense. *Scott*, 133 Cal. App. 4th at 595.

While "the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified," over time, "should [a prisoner] continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of [his] offense and prior conduct would raise serious questions involving his liberty interest in parole." *Biggs v. Terhune*, 334 F.3d 910, 916 (9th Cir. 2003). "A continued reliance . . . on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Id.* at 917.

### B. Analysis

This Court finds Petitioner's arguments unpersuasive. The Board's decision here relied not only on the circumstances of petitioner's commitment offense but also on his failure to sufficiently participate in self-help and his lack of insight into his commitment offense and behavior. Under the relevant standard, these factors constitute "some evidence" in support of the Board's decision that petitioner was not yet suitable for release on parole. *Sass*, 461 F.3d at 1129; *Irons*, 505 F.3d at 853. Accordingly, Petitioner is not entitled to habeas relief on this claim.

### 3. California Penal Code section 3401

Petitioner claims the BPH failed to consider Petitioner's suitability for parole in a manner required by California Penal Code section 3041. The Los Angeles County Superior Court rejected this claim, finding that the Board did not rely on static factors alone.

### A. Background

Section 3041(a) requires the Board to meet with each inmate one year before the expiration of his minimum sentence and normally set a release date in a manner that will

11

provide uniform terms for offenses of similar gravity and magnitude with respect to their threat to the public, as well as comply with applicable sentencing rules. Cal. Penal Code § 3041(a). However, subsection (b) of this section requires that the Board set a release date "*unless* it determines that the gravity of current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." *Id.* at § 3041(b) (emphasis added).

To determine whether an inmate is a current threat to society, the Board must in turn "identify and weigh . . . [pre and post-conviction] factors relevant to predicting whether the inmate will able to live in society without committing additional antisocial acts." *In re Lawrence*, 44 Cal. 4th 1181, 1205-1206 (2008). Additionally, title 15, section 2402, of the California Code of Regulations states that "all relevant, reliable information available to the panel shall be considered in determining" a prisoner's suitability for parole. Cal. Code Regs., tit. 15, § 2402. Furthermore, "circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." *Id.* BPH considers an expansive list of factors including: the prisoner's social history, the commitment offense and prior criminal history, his behavior before, during and after the crime and "any other information which bears on the prisoner's suitability for release." *See* Cal. Code Regs. tit. 15, § 2402(b) – (d). The regulations specifically include as factors tending to support unsuitability for parole: whether the commitment offense was committed in an especially heinous, atrocious or cruel manner; a prisoner's previous record of violence; an unstable social history; psychological factors; and institutional behavior. Cal. Code Regs. tit. 15, § 2402(c). The regulations specifically include as factors tending to support suitability for parole: no juvenile record; stable social history; signs of remorse; stress-related motivation for the crime; lack of criminal history; age; understanding and plans for the future; and institutional behavior. Cal. Code Regs. tit. 15, § 2402(d).

The key is how those factors interrelate and whether those factors provide "some evidence" the prisoner is currently dangerous to the public. *See In re Lawrence*, 44 Cal. 4th at 1212; see also *Hayward v. Marshall*, 512 F.3d 536, 543 (9th Cir. 2008) (it is not "that a particular factor or factors indicating unsuitability exist but that a prisoner's release will unreasonably endanger public safety."). Accordingly, the inquiry is whether "some evidence indicates a parolee's release unreasonably endangers public safety." *Id.* As long as the evidence underlying the Board's decision has "some indicia of reliability," parole has not been arbitrarily denied. *See Jancsek v. Or. Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987). As the California courts have continually noted, the Board's discretion in parole release matters is very broad. *See Lawrence*, 44 Cal.4th at 1204. Thus, the penal code, corresponding regulations, and California law clearly establish that the fundamental consideration in parole decisions is public safety and an assessment of a prisoner's current dangerousness. *See id.* at 1205-06.

  B. Analysis

Here, Petitioner was not constitutionally deprived of his liberty interest in parole because there was "some evidence" to support the Board's decision denying him parole after over twenty years in prison and six parole hearings. Petitioner has not established that the BPH decision violated his rights. For the reasons stated above in Section 3, Petitioner is denied relief on this claim.

  4. <u>Untimeliness of Remaining Claims</u>

Petitioner's remaining claims, 4 through 6 in the amended petition, challenge aspects of his plea agreement and the denial of parole as violating its terms. Respondent argues that these claims are time-barred.

  A. Legal Standard

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became law on April 24, 1996, imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners. 28 U.S.C. § 2244(d)(1).

Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (A) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (C) the constitutional right asserted was recognized by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

Under § 2244(d)(1)(A), the limitations period begins running on the date that the petitioner's direct review became final. In this case, judgment was rendered on August 12, 1985, and Petitioner did not file an appeal. Pursuant to Rule 30.1 (amended and renumbered 8.308) of the California Rules of Court, Petitioner had sixty (60) days in which to file a notice of appeal. Because Petitioner did not file a notice of appeal, his direct review concluded on October 12, 1985, when the sixty-day period for filing a notice of appeal expired. Thus, under § 2244(d)(1)(A), Petitioner would ordinarily have had one year, or until October 12, 1986, in which to file his federal petition for writ of habeas corpus. *See Patterson v. Stewart*, 251 F.3d 1243, 1245 (9th Cir.2001).

In most cases, the one year limitations period will start on the date on which the judgment becomes final after the conclusion of direct review or the time passes for seeking direct review, but the limitations period may start on a later date. *See* 28 U.S.C. § 2244(d)(1)(A)-(D). The statute of limitations applies to the entire "application" when the starting date is completion of direct review under § 2244(d)(1)(A), but when the starting date is determined under any of the other subsections, §§ 2244(d)(1)(B)-(D), the statute of limitations is applied on a claim-by-claim basis. *Pace v. DiGuglielmo*, 544 U.S. 408, 416 n.6 (2005) ("[Section] 2244(d)(1) provides that a '1-year period of limitation shall apply to an *application* for a writ of habeas corpus.' (Emphasis added.)

The subsection then provides one means of calculating the limitation with regard to the 'application' as a whole, § 2244(d)(1)(A) (date of final judgment), but three others that require claim-by-claim consideration, § 2244(d)(1)(B) (governmental interference); § 2244(d)(1)(C) (new right made retroactive); § 2244(d)(1)(D) (new factual predicate).").

Under § 2244(d)(1)(D), the one-year limitation period starts on the date on which "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The time begins "'when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.'" *Hasan v. Galaza*, 254 F.3d 1150, 1154 n.3 (9th Cir. 2000) (quoting *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000)) (remanding case to district court for further factual findings concerning determination of when, with exercise of due diligence, petitioner could have discovered facts to support prejudice prong of IAC claim). Section 2244(d)(1)(D) accordingly allows the limitation period to start running at a later date "when the facts on which a federal habeas claim is based would not have been discovered by a duly diligent petitioner." *Ybanez v. Johnson*, 204 F.3d 645, 646 (5th Cir. 2000) (citation omitted). Petitioner initially filed his claim in the state courts in 2007, long after the limitations period had run with regard to any challenge to the initial plea and long after Petitioner would have been aware of the facts supporting his breach of contract claim with regard to the failure to grant parole. Thus, absent any applicable tolling, the instant petition is barred by the statute of limitations. Petitioner has the burden of showing facts entitling him to statutory and to equitable tolling. *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002); *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002). Petitioner has failed to establish entitlement to either tolling provision.

B.   Analysis

Petitioner's direct appeal became final in 1985 and he first became eligible for parole in 1995. Petitioner has had multiple parole hearings in which he was denied parole before the 2004 hearing. Yet it wasn't until April 9, 2007, that Petitioner filed a

petition in the state courts seeking relief on the ground that the plea agreement had been violated and that the plea was not knowing and voluntary. On May 4, 2007, the California Court of Appeal denied relief, finding that petitioner failed to show prejudice from the error.

Under AEDPA, the statute of limitations for a claim regarding the circumstances of Petitioner's plea is long past expired, as Petitioner filed his federal petition on March 4, 2008, more than twenty three years after the conclusion of his direct review. *Patterson*, 251 F.3d at 1246. Petitioner's claims regarding the breach of contract with regard to the denial of parole, governed by § 2244(d)(1)(D), are also untimely. Petitioner was initially eligible for parole in 1995 but failed to bring his first state court petition regarding the breach of contract until April 9, 2007, after multiple parole hearings. Thus, even if the limitations period is governed by § 2244(d)(1)(D), the petition is still untimely.

Because Petitioner's claims 4 through 6 in the petition are denied as untimely, Petitioner's motion seeking judicial notice (docket no. 19) is DENIED as moot.

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED. The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: January 14, 2010

JEFFREY S. WHITE
United States District Judge

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | FOR THE |
| 3 | NORTHERN DISTRICT OF CALIFORNIA |

LONG LAM,

        Plaintiff,

  v.

BEN CURRY et al,

        Defendant.

Case Number: CV06-07347 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on January 14, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Long Lam
D12629
CTF Central
P.O. Box 689
Soledad, CA 93960

Dated: January 14, 2010

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk